## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AWK CONSULTING ENGINEERS, INC. | ) ) ) | 2:24-CV-898-NR |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| PAYLOCITY CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM ORDER

Plaintiff AWK Consulting Engineers, Inc. brings breach-of-contract and unjust-enrichment claims against Defendant Paylocity Corporation in connection with a contract for payroll administration services, alleging that Paylocity had a duty to detect an AWK employee's fraudulent payroll activities. Paylocity now moves to dismiss the complaint for failure to state a claim. For the reasons below, the Court will grant Paylocity's motion, and dismiss the complaint with prejudice.

## BACKGROUND

Under the parties' July 2018 contract, Paylocity provided AWK with payroll administration services. ECF 1-1, ¶ 8. There are several clauses in the contract that are relevant to this dispute.

Under the "Confidentiality and Protection of Client Data" section:

Paragraph 2 states:

> "Paylocity will maintain adequate security over CLIENT [*i.e.*, AWK] information using commercially reasonable safeguards over the hardware, software, personnel and processes used to support the delivery of payroll and related services to the CLIENT . . . ." ECF 1-1, p. 31.

Paragraph 3 states:

> "CLIENT will maintain adequate security over the hardware, personnel and processes used to access

Paylocity's software and services, including usernames and passwords used to access Paylocity's software." *Id.*

Under the "Responsibilities" section:

Paragraph 1 states:

"Paylocity will use due care in processing CLIENT's work, and shall be responsible for correcting errors which are caused by Paylocity equipment, processors, or employees in the course of their work." *Id.*

Paragraph 5 states:

"CLIENT is solely responsible for the content and accuracy of all data input and then subsequently processed by Paylocity. CLIENT will submit to Paylocity its payroll and other data in a form, at a time and by the method specified by Paylocity. Because the accuracy of the payroll and other information is limited to the CLIENT's data, Paylocity is not responsible for CLIENT errors, wage and hour violations, employment discrimination, garnishment calculations or other employment policies which may violate the law. It is the CLIENT's responsibility to review the processed payroll and other information and to promptly identify any errors. If the data submitted to Paylocity is incorrect, incomplete, or not in proper form, then CLIENT agrees to pay Paylocity's additional charges then in effect for the corrections to said data." *Id.*

After the parties entered into the contract, AWK hired an employee, Tracey Smith, who "suppl[ied] Paylocity with necessary data and documentation to process AWK's payroll." ECF 1-1, ¶ 12. But, in June 2022, Ms. Smith began to run payroll for herself "outside of the customary two times a month," and at some point, was running payroll for herself multiple times in a single week. *Id.*, ¶¶ 13-15. She did this by creating "two separate control numbers in the Paylocity system for herself in order to run multiple payrolls under the same social security number[.]" *Id.*, ¶ 17. AWK didn't discover Ms. Smith's fraudulent conduct until May 2023. *Id.*, ¶ 16. During this period, Ms. Smith processed payroll through Paylocity, embezzling $499,272.10. *Id.*, ¶¶ 18-20.

After AWK discovered the fraud, it sued Paylocity in state court for breach of contract and unjust enrichment, claiming that Paylocity "failed on multiple occasions" to detect Ms. Smith's "frequent, ongoing, numerous, and unauthorized fraudulent transactions despite being contractually obligated to do so." *Id.*, ¶ 32. According to AWK, this constituted a breach of Paylocity's duties under the contract; and, alternatively, a form of unjust enrichment. Paylocity removed the action to federal court, and then moved to dismiss the complaint on the ground that it fails to state claims for breach of contract or unjust enrichment. ECF 1; ECF 8. The motion is now ready for disposition.[1]

## DISCUSSION & ANALYSIS[2]

**I.**  **AWK's contract claim fails because there was no contractual duty for Paylocity to detect and prevent the fraud.**

The contract here is governed by Illinois law, and so the Court turns to Illinois law to analyze AWK's contract claim.[3] "In Illinois, in order to plead a cause of action

---

[1] In opposing Paylocity's motion, AWK argues that the motion should be denied because Paylocity filed it without first meeting and conferring with AWK, as required by the Court's Practices and Procedures. ECF 14, p. 2. However, after the motion was fully briefed, the Court ordered the parties to meet and confer on the issues raised in the motion. ECF 20. The parties then did so, and notified the Court that they did not reach any agreement on the claims in this case that would narrow the motion or lead to any sort of curative amendment of the complaint. ECF 21. As such, the Court will decide the motion on the merits.

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Any reasonable inferences should be considered in the light most favorable to the plaintiff. *See Lula v. Network Appliance*, 255 F. App'x 610, 611 (3d Cir. 2007) (citing *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989)).

[3] The contract states: "This Agreement shall be construed according to the laws of the State of Illinois and constitutes the entire Agreement between the parties." ECF 1-1, p. 33. Because this is a diversity jurisdiction case, the Court must apply the choice of law rules of the forum state. *Cook v. Gen. Nutrition Corp.*, 749 F. App'x 126, 129

for breach of contract, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages. Only a duty imposed by the terms of a contract can give rise to a breach." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) (cleaned up).

AWK alleges that Paylocity breached the contract in three ways: (1) "By failing to maintain adequate security over AWK's information using commercially reasonable safeguards;" (2) "By failing to use due care in processing AWK's work;" and (3) "By not being responsible for correcting the obvious errors regarding AWK's submitted information for processing." ECF 1-1, ¶ 35. Paylocity, in response, argues that the party that was contractually bound to monitor, detect, and prevent Ms. Smith's fraudulent conduct was AWK, not Paylocity. ECF 9, p. 2.

"Under Illinois's four corners rule, if a written agreement is unambiguous, then the scope of the parties' obligations must be determined from the contract language without reference to extrinsic evidence." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 372 (7th Cir. 2009) (cleaned up); *see Kallman v. Radioshack Corp.*, 315 F.3d 731, 735 (7th Cir. 2002) (noting that interpretation of the terms of an unambiguous contract is "traditionally a question of law"); *Palda v. Gen. Dynamics Corp.*, 47 F.3d 872, 876 (7th Cir. 1995) ("Where a plaintiff's cause of action arises out

---

(3d Cir. 2018). Pennsylvania courts, adopting the Restatement (Second) Conflict of Laws, "honor[] choice-of-law provisions unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Id.* at 130 (cleaned up). Neither of these conditions applies here: Paylocity's principal place of business is in Illinois, and neither party has argued that there is another state with a materially greater interest than Illinois in the determination of the claims at issue.

of a contract which is attached to the complaint as an exhibit, and such attachment shows unambiguously on its face that the relief prayed for is not merited, dismissal is both justified and appropriate."); *Dupont v. Freight Feeder Aircraft Corp.*, No. 13-256, 2013 WL 5770729, at *3 (S.D. Ill. Oct. 24, 2013) ("Whether the contract is ambiguous is a question of law to be determined by the Court.").

Whether AWK's breach-of-contract claim survives hinges on if the contract unambiguously assigns to Paylocity the obligation to detect or prevent the fraud that occurred. The contractual language must be interpreted according to its "plain, ordinary and popular meaning[,]" and a contractual provision is not ambiguous if "a court can discover its meaning simply through knowledge of those facts which give it meaning as gleaned from the general language of the contract." *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036-38 (7th Cir. 1998) (cleaned up) (observing that a contractual provision "is not rendered ambiguous simply because the parties do not agree on the meaning of its terms" (cleaned up)). But if the language of the contract "is susceptible to more than one interpretation, then it is deemed ambiguous and its construction is a question of fact, where parol evidence is admissible to explain and ascertain what the parties intended." *ExxonMobil Oil Corp. v. Amex Const. Co.*, 702 F. Supp. 2d 942, 963 (N.D. Ill. 2010) (cleaned up).

After careful review of the language of the contract, the Court finds it to be unambiguous, and further finds that it places the duty to prevent the fraud of an AWK employee on AWK, not Paylocity. The contract unambiguously states that AWK is "solely responsible for the content and accuracy of all data input and then subsequently processed by Paylocity"; that it is AWK's "responsibility to review the processed payroll and other information and to promptly identify any errors"; and that "[b]ecause the accuracy of the payroll and other information is limited to [AWK's] data, Paylocity is not responsible for [AWK's] errors." ECF 1-1, p. 31. Thus, under the clear terms of the contract, Paylocity disclaimed responsibility for any errors in

the data that AWK submitted to Paylocity for processing. Even though the information that Ms. Smith provided Paylocity was erroneous and fraudulent, she nonetheless was supplying "data" to Paylocity. So AWK bears the responsibility of correcting the "obvious errors regarding AWK's submitted information for processing." ECF 1-1, ¶ 35.[4]

The Court is not otherwise persuaded by AWK's assertion that the other contractual provisions (noted above) create a contractual duty for Paylocity to protect against the fraud that occurred. The Court addresses each of AWK's three main arguments, in turn.

First, AWK points to the contractual provision that "Paylocity will maintain adequate security over [AWK] information using commercially reasonable safeguards over the hardware, software, personnel and processes used to support the delivery of payroll and related services to" AWK. ECF 1-1, p. 31; ECF 14, p. 11. Contrary to AWK's reading, this provision does not impose an affirmative duty on Paylocity to detect fraud. The provision falls within a section titled "Confidentiality and Protection of Client Data"; reading this provision within the context of the other provisions under this section, it's clear that the purpose of this section is to ensure the confidentiality and security of the data that Paylocity receives from AWK and to prevent disclosure of client data to unauthorized third parties. Paylocity's obligation to "maintain adequate security" over AWK's information is aimed at *safeguarding* AWK's information from unauthorized third parties, not at *correcting* the information

---

[4] By way of background only and not considered as part of the Court's assessment of the sufficiency of the complaint, Paylocity provided a description of how its payroll processing service works, which is consistent with the allegations in the complaint. Every pay period, AWK uploaded data to Paylocity's system "showing which AWK employees had earned wages and how much they should be paid; Paylocity then debited AWK's bank account and handled the logistics of withholding taxes and paying the designated wages to each employee on AWK's behalf." ECF 8-1, p. 3. As the complaint asserts, it was Ms. Smith's job to "supply Paylocity with necessary data and documentation to process AWK's payroll." ECF 1-1, ¶ 12.

that AWK submits to Paylocity.  Therefore, contrary to AWK's claim, this provision does not create a "duty to audit against fraudulent data entries[.]" ECF 14, p. 10.

Second, AWK points to the provision that "Paylocity will use due care in processing [AWK's] work, and shall be responsible for correcting errors which are caused by Paylocity equipment, processors, or employees in the course of their work." ECF 1-1, p. 31; ECF 14, p. 8.  But this provision, too, only obligates Paylocity to use due care in *processing* AWK's information, not at correcting data that AWK submits to Paylocity.

Paylocity provides an apt example of a scenario in which Paylocity would bear responsibility for failing to use due care in processing AWK's work: if AWK "uploads accurate data to Paylocity" stating that employee A should be paid "$7,550 in wages for a particular week, but, through an error in Paylocity's system, that $7,550 was paid" to employee B instead, "[t]hat would be a mistake on Paylocity's end for which it would be responsible" under the contract.  ECF 18, p. 4.  Again, under the contract, AWK has the sole responsibility for preventing the fraud that occurred here.  AWK cannot selectively point to portions of contractual language that appear to support its position (*e.g.*, that Paylocity "will use due care in processing" AWK's work), but disregard other contractual language that clearly states it is AWK's responsibility to ensure the accuracy of the data submitted to Paylocity for processing.  *See Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007) ("[B]ecause words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others.  The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself." (cleaned up)); *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1038 (7th Cir. 1998) ("Illinois law requires that we do not look at the contested language in isolation.").

Third, AWK claims that Paylocity was "responsible for correcting the obvious errors regarding AWK's submitted information for processing" and argues that

Paylocity breached the contract because it "failed to identify the sudden change in the frequency and in the amount for payroll processing for one person again and again over the course of eleven months[.]"  ECF 1-1, ¶ 35; ECF 14, p. 12.  But the contract does not expressly obligate Paylocity to correct errors in AWK's submitted information, even if AWK thinks that the errors are "obvious" or represent a "gross deviation" from the customary payroll amounts (ECF 1-1, ¶ 35; ECF 14, p. 12), and the Court will not impose such a duty when this duty could have been expressly incorporated into the contract if the parties had intended so.[5]  *See Holmes v. Godinez*, 991 F.3d 775, 780 (7th Cir. 2021) ("Illinois law imposes a strong presumption against provisions that easily could have been included in the contract but were not. And a court will not add terms simply to reach a more equitable agreement." (cleaned up)).

In sum, the contractual duty to detect and prevent against Ms. Smith's fraud did not fall on Paylocity; and with no duty, AWK cannot state a contract claim under Illinois law.

---

[5] Moreover, AWK's suggestion that Paylocity had a general duty to protect AWK from its own employee's fraud is not plausible.  As Paylocity points out, it has "no way of knowing how much AWK *intended* to pay" its employee—it only knows how much "AWK *instructed* Paylocity to pay" the employee.  ECF 18, p. 4.  And, under the contract, AWK is the one with the obligation to "maintain adequate security over the hardware, personnel and processes used to access Paylocity's software and services, including usernames and passwords used to access Paylocity's software."  ECF 9, p. 10; ECF 1-1, p. 31.  The duty to prevent fraudulent data entries (and AWK employees' misuse of their login credentials) falls on AWK.  *See Eldridge v. ProEmp, Inc.*, No. 4-14-0457, 2015 WL 791969, at *8 (Ill. App. Ct. Feb. 24, 2015) (the terms of agreement between accountant and plaintiff company to determine why there was less cash flow than expected did not require accountant to discover that company's employee—whose job duties including transmitting financial information to accountant—was embezzling and hiding her activities through deceptive bookkeeping).

## II.    AWK forfeited its unjust-enrichment claim, which also fails on the merits.

Paylocity has also moved to dismiss the unjust-enrichment claim, arguing that recovery under an unjust-enrichment theory is not available when there is no dispute about the existence and validity of a contract.  ECF 9, p. 16.   AWK did not respond to Paylocity's argument, and for that reason alone, has forfeited this claim.  *Lisowski v. Walmart Stores, Inc.*, 552 F. Supp. 3d 519, 525 n.4 (W.D. Pa. 2021) (Ranjan, J.), *aff'd*, No. 21-2501, 2022 WL 2763698 (3d Cir. July 15, 2022).  But even on the merits, the claim fails.

As a preliminary matter, the choice-of-law provision in the contract does not apply to AWK's unjust-enrichment claim because the provision states only that "[t]his Agreement" should be construed under Illinois law.  ECF 1-1, p. 33; *see Runaway Recs. Prods., LLC v. Franciscan Univ. of Steubenville*, No. 21-752, 2022 WL 5169810, at *2-3 (W.D. Pa. Oct. 5, 2022) (Hardy, J.) (finding agreement between parties narrowly drawn because language in choice-of-law provision "[spoke] only to this agreement," so contractual choice-of-law provision didn't apply to non-contract claims (cleaned up)).  Therefore, the Court will determine which state's law applies.

Under Pennsylvania's choice-of-law approach, courts look at "which state has the greater interest in the application of its law." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 231 (3d Cir. 2007) (cleaned up).  Courts determine which state has the "most significant relationship" to the claim at issue by considering the factors from the Second Restatement of Conflict of Laws.[6]  *Id.* at 232; *see also Broederdorf v. Bacheler*, 129 F. Supp. 3d 182, 194 (E.D. Pa. 2015).    Under the Restatement, the following

---

[6] The factors from Section 6 of the Second Restatement of Conflict of Laws are: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."  Restatement (Second) of Conflict of Laws § 6.

contacts are relevant to an unjust-enrichment claim: "(1) the place where the parties' relationship was centered; (2) the state where defendants received the alleged benefit or enrichment; (3) the location where the act bestowing the enrichment or benefit was done; (4) the parties' domicile, residence, place of business, and place of incorporation; and (5) the jurisdiction "where a physical thing . . ., which was substantially related to the enrichment, was situated at the time of the enrichment." *Powers v. Lycoming Engines*, 328 F. App'x 121, 126 (3d Cir. 2009) (quoting Restatement (Second) of Conflict of Laws § 221(2)).

Analyzing these contacts and weighing them "according to their relation to the policies and interests underlying the issue," the Court finds that Illinois law applies to the unjust-enrichment claim. *Id.* at 126 (cleaned up). AWK is incorporated and has its principal place of business in Pennsylvania, while Paylocity is organized in Delaware and has its principal place of business in Illinois. ECF 1, p. 2. However, importantly, AWK's unjust-enrichment claim is premised on allegations that Paylocity collected payments from AWK for providing payroll processing services despite its failure to detect fraud, and as such, "[i]t would be inequitable and unjust for Paylocity to retain the benefits received from AWK[.]" ECF 1-1, ¶ 45. Presumably, since Paylocity's principal place of business is in Illinois, it received the alleged benefit (the payments) in Illinois. And the activity underlying the unjust-enrichment claim—Paylocity's alleged failure to detect fraud in its payroll processing system— would have occurred in Illinois. Moreover, the unjust-enrichment claim is closely related to (if not arising out of) the contract between the parties, which is governed by Illinois law, suggesting that the parties' relationship is centered on Illinois law. Considering that the parties should justifiably expect that Illinois law would apply to an unjust-enrichment claim where the alleged wrongdoing occurred in Illinois, the defendant's principal place of business is in Illinois, and the parties' relationship

arises out of a contract governed by Illinois law, the Court will apply Illinois law.[7] *See Broederdorf*, 129 F. Supp. 3d at 195.

Under Illinois law, "recovery for unjust enrichment is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and defendant." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013); *see also Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) ("Once a valid contract is found to exist, quasi-contractual relief is no longer available."). A plaintiff can plead an unjust-enrichment claim in the alternative to a breach of contract, but only in this particular manner: "(1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is *not* an express contract, then the defendant is liable for unjustly enriching himself at my expense." *Cohen*, 735 F.3d at 615; *see also Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 797 (N.D. Ill. 2010) ("While a party may plead a claim for unjust enrichment in the alternative where the existence of a valid contract is questioned, if there is no dispute over the existence of a contract, a claim for unjust enrichment necessarily fails."). Therefore, a plaintiff cannot include "allegations of an express contract which governs the

---

[7] "Normally, Pennsylvania choice of law analysis involves a two-step inquiry." *KDH Elec. Sys., Inc. v. Curtis Tech. Ltd.*, 826 F. Supp. 2d 782, 801 (E.D. Pa. 2011). First, courts determine if a conflict exists between the laws of the competing states. *Bessemer Sys. Fed. Credit Union v. Fiserv Sols., LLC*, 472 F. Supp. 3d 142, 156 (W.D. Pa. 2020) (Colville, J.). If there is a conflict, courts then determine which state has the greater interest in application of its law. *LifeMD, Inc. v. Lamarco*, 607 F. Supp. 3d 576, 590 (W.D. Pa. 2022) (Stickman, J.).

Here, the Court notes that, under Pennsylvania law, AWK's unjust-enrichment claim would also be dismissed, because "pleading both breach of contract and unjust enrichment is plausible only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy[.]" *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014). Neither party disputes that there was a valid contract. So even though AWK is permitted to plead unjust enrichment in the alternative, it can't do so here, where there is no dispute over the existence or validity of the contract.

relationship of the parties, in the count[] for unjust enrichment[.]" *Cohen*, 735 F.3d at 615; *see Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. App. Ct. 2005) (dismissing unjust-enrichment claim, even though contract was not specifically referenced in the unjust-enrichment count, when plaintiff incorporated the allegations of the breach of contract count into the unjust enrichment count and attached the contract to her complaint); *Oyoque v. DePaul Univ.*, 520 F. Supp. 3d 1058, 1065-66 (N.D. Ill. 2021) (finding that dismissal of unjust enrichment claim, pleaded in the alternative, is appropriate when it is "premised on a failure to fulfill contractual terms").

Based on these principles, AWK's unjust-enrichment claim fails for two separate reasons.

First, dismissal of AWK's alternative unjust-enrichment claim is appropriate here because AWK is not challenging the validity or applicability of a contract. To the contrary, AWK has (1) incorporated by reference the allegations of a valid contract in its unjust-enrichment count; (2) attached the contract to the complaint; and (3) explicitly premised its unjust enrichment count on Paylocity's alleged failure to "remedy the *breach of terms*[.]" ECF 1-1, ¶¶ 37, 40 (emphasis added). But AWK "cannot bring a claim about an *implied* contract based on the language of the *express* contract." *Pittsfield Dev., LLC v. Travelers Indem. Co.*, 542 F. Supp. 3d 791, 804 (N.D. Ill. 2021) (emphasis in original). Since the unjust-enrichment count assumes the existence of a valid written agreement governing the parties' relationship and is based on express contractual promises, AWK's unjust-enrichment claim fails. *See N. Tr. Co. v. MS Sec. Servs., Inc.*, No. 05-3370, 2006 WL 695668, at *13 (N.D. Ill. Mar. 15, 2006) (dismissing unjust-enrichment claim where the alleged benefit was conferred upon defendants pursuant to the terms of the contracts, and plaintiff could not show that its unjust-enrichment claim was truly alternative to the breach of contract claim).

Second, AWK could only bring an unjust-enrichment claim if it falls outside the scope of the parties' contract. *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 571 (7th Cir. 2016). But, to the extent that AWK is suggesting that its unjust-enrichment claim falls outside the scope of the contract, this argument is foreclosed under Illinois law.

"In determining whether a claim [of unjust enrichment] falls outside a contract, the *subject matter* of the contract governs, not whether the contract contains terms or provisions related to the claim. The reason for prohibiting a claim of unjust enrichment between contracting parties is to prohibit a party whose expectations were not realized under the contract from nevertheless recovering outside the contract." *Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 689 (7th Cir. 2004) (citations omitted) (emphasis added); *see Archon Constr. Co., Inc. v. U.S. Shelter, L.L.C.*, 78 N.E.3d 1067, 1074 (Ill. App. Ct. 2017); ("It is long settled in Illinois that an action in quasi-contract, such as *quantum meruit*, is precluded by the existence of an express contract between the parties regarding the work that was performed."); *Orawin Tech., LLC v. Healthcare Delivered, LLC*, No. 16-19, 2017 WL 4150726, at *5 (N.D. Ill. Sept. 18, 2017) ("When defining the subject matter of a contract, Illinois courts broadly construe the contract.").

Under the parties' contract, Paylocity provided AWK with "bundled payroll and related services as set forth in this services agreement[.]" ECF 1-1, p. 31. Thus, the general subject matter of the contract was the provision of payroll services. And AWK's unjust-enrichment claim, which is based on Paylocity's alleged failure to detect fraudulent payroll transactions despite being paid to process AWK's payroll, arises from the subject matter of the contract, *e.g.*, Paylocity's provision of payroll services to AWK. It is clear that the basis for the unjust-enrichment claim is "related to the subject matter covered in the contract[,]" and so "[t]he existence of the contract precludes [AWK] from pursuing an unjust enrichment claim on this basis." *Stevens*

*v. Interactive Fin. Advisors, Inc.*, No. 11-2223, 2015 WL 791384, at *17 (N.D. Ill. Feb. 24, 2015), *aff'd in part*, 830 F.3d 735 (7th Cir. 2016); *see also Enger*, 812 F.3d at 571 (unjust-enrichment claim cannot be brought when it challenges the terms of an implied contract between the parties).

Moreover, this is not a case in which the scope of the contract is otherwise difficult to determine. *See Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 887 (7th Cir. 2022) ("An unjust enrichment claim may survive a motion to dismiss when the validity or the scope of the contract is difficult to determine, or if the claim at issue falls outside the contract."). AWK cannot suggest that there was an implied promise for Paylocity to detect or prevent the fraud that occurred, because the contract not only expressly allocates the responsibility of ensuring the accuracy of payroll information to AWK, but also contains an integration clause specifying that the contract "constitutes the entire [a]greement between the parties." ECF 1-1, p. 33. *See Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1442 (7th Cir. 1992) (declining to imply a duty to use best efforts due in part to integration clause in contract); *Indus. Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 432 N.E.2d 999, 1002-03 (Ill. App. Ct. 1982) (where contract included an integration clause, the defendant had a right to assume that "the contract defined the entire relationship of the parties with respect to all matters related to defendant's product" and that, "absent a valid amendment to the agreement, [] it should not have to compensate plaintiff for any acts done in relation to the subject matter of the contract except pursuant to the contract terms[,]" even though the contract did not expressly cover whether the defendant had to pay for a specific service that the plaintiff performed).

In entering the contract, AWK assumed the risk of losses from inaccurate payroll information and did not otherwise expressly require Paylocity to prevent fraudulent payroll transactions. So to allow AWK to "unilaterally alter the terms of the contract by now claiming unjust enrichment" would be improper when it "could

have, but did not provide for the allocation of this risk under the terms of the contract." *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985); *Indus. Lift Truck Serv. Corp.*, 432 N.E.2d at 1002 ("Quasi-contract is not a means for shifting a risk one has assumed under contract.").

For these reasons, AWK's unjust-enrichment count fails to state a claim and must be dismissed.

## III. The Court will dismiss the complaint with prejudice.

The dismissal of the claims here will be with prejudice, and without leave to amend. The Court's analysis is purely legal, and so the Court finds that amendment would be futile, and will not grant leave to amend the complaint. *See, e.g.*, *Util. Audit, Inc.*, 383 F.3d at 685; *Buschauer v. Columbia Coll. Chicago*, 579 F. Supp. 3d 1045, 1050-51 (N.D. Ill. 2022); *Hickman*, 683 F. Supp. 2d at 797; *Song v. PIL, L.L.C.*, 640 F. Supp. 2d 1011, 1016-17 (N.D. Ill. 2009).

Moreover, the Court gave AWK multiple chances to amend. AWK could have amended after the court-ordered meet-and-confer, *see* ECF 20; it could have also amended as a matter of right after the motion to dismiss was filed, under Federal Rule of Civil Procedure 15(a)(1). AWK did not do so. AWK also did not request leave to amend as part of the briefing on the motion. So allowing amendment at this point would also be inequitable. *See Davis v. Holder*, 994 F. Supp. 2d 719, 727 (W.D. Pa. 2014) (Gibson, J.) ("Factors that weigh against amendment include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." (cleaned up)); *Goldfish Shipping, S.A. v. HSH Nordbank AG*, 623 F. Supp. 2d 635, 640 (E.D. Pa. 2009), *aff'd*, 377 F. App'x 150 (3d Cir. 2010) ("Delay becomes undue, and thereby creates grounds for the district court to refuse leave to amend, when . . .the plaintiff has had previous opportunities to amend." (cleaned up)).

\*    \*    \*

Therefore, after careful consideration, it is hereby **ORDERED** that Paylocity's motion to dismiss (ECF 8) is **GRANTED**, and the complaint is hereby **DISMISSED WITH PREJUDICE**.  The Clerk of Court is directed to mark this case as **CLOSED**.

Date: January 31, 2025                              BY THE COURT:

                                                                      /s/ J. Nicholas Ranjan
                                                                      United States District Judge